Estate of William B. Marbury, Jr., Deceased, Eula E. Marbury, Administratrix, and Eula E. Marbury v. Commissioner.
Estate of Marbury v. Commissioner
Docket No. 2748-66.
United States Tax Court
T.C. Memo 1967-120; 1967 Tax Ct. Memo LEXIS 139; 26 T.C.M. (CCH) 551; T.C.M. (RIA) 67120; May 31, 1967
Kendall O. Schlenker, 1st Nat'l Bank Bldg., Albuquerque, N. Mex., for the petitioners. Ralph V. Bradbury, Jr., for the respondent. FAY
Memorandum Findings of Fact and Opinion FAY, Judge: Respondent determined a deficiency in the Federal income tax of petitioners for the taxable year ending December 31, 1963, in the amount of $2,925.10. The sole issue for determination is whether William B. Marbury, Jr., sustained a deductible loss in the taxable year 1963 from a transaction entered into for profit pursuant to section 165(c)(2) or a theft loss under section 165(c)(3) of the Internal Revenue Code of 1954. [1]
Findings of Fact Some of the facts have been stipulated, and the stipulation of facts, together with the exhibits attached thereto, is incorporated herein by this reference. The late William B. Marbury, Jr. (hereinafter *141 sometimes referred to as Marbury) and Eula E. Marbury, then husband and wife, filed a joint Federal income tax return for the taxable year 1963 with the district director of internal revenue in Phoenix, Arizona. On June 25, 1964, an unsigned amended return was filed with the district director in Phoenix on their behalf. Marbury died on August 20, 1964. Eula, his surviving wife and one of the petitioners herein, was appointed administratrix of his estate, and letters of administration were issued to her on March 18, 1966. The legal residence of Eula and of the estate is Farmington, New Mexico. On December 1, 1961, Marbury borrowed the sum of $5,000 from Fendall M. Clagett. On December 4, 1961, Marbury secured a loan in the amount of $2,000 from The Citizens Bank of Farmington, New Mexico. In securing the loan from Clagett, Marbury stated that he intended to give the $5,000 to an unnamed person who had convinced him he could double his money in thirty days. Later in December of 1961 Marbury turned over the sum of $7,000 to Carroll ("Bob") Berry (hereinafter referred to as Berry). [2] Although Marbury and Berry had an understanding that any profit was to be divided equally, Marbury *142 had no idea as to the manner in which Berry was going to double the money. At that time Berry was considering speculating in wheat but this intention was never carried out. He retained the money, looking for an opportunity to invest it. By the year 1963, however, Berry had utilized approximately $3,700 to pay for his personal living expenses. The balance of Marbury's money Berry invested, in his own name, during March of 1963 in the operation of a bar in Nevada. This business was operated in corporate form, and the stock was issued to Berry in his own name. This business venture failed in October of 1964. After his receipt of the money from Marbury in 1961, Berry left New Mexico and moved to California where he remained until approximately March of 1963 when he moved to Nevada. Berry, sometime during either 1962 or 1963, [3] received a telephone call from Marbury. In the course of this conversation, although he still had in his possession $3,300 of Marbury's money, Berry informed *143 Marbury that the money had been spent and that there was no way that Berry could repay any of it. The only other inquiry made by Marbury with regard to his money was a letter addressed to Berry bearing a postmark dated August 30, 1963. This letter was returned to Marbury as Berry was no longer at that address. On their joint Federal income tax return for the year 1963, Marbury and Eula deducted the amount of $7,000 as a loss incurred in a transaction entered into for profit. Respondent, in his statutory notice of deficiency, disallowed the deduction stating that it has not been established that there was either an investment or a loss. Opinion Section 165(a) provides that "There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise." Under this section, whether a loss is characterized under section 165(c)(2) or (c)(3), [4] it is properly deductible only in the year in which it was actually sustained. *144 When a loss is sustained is a question of fact, and the burden of proof is on petitioners. Respondent's regulations provide that "a loss shall be treated as sustained during the taxable year in which the loss occurs as evidenced by closed and completed transactions and as fixed by identifiable events occurring in such taxable year." Section 1.165-1(d)(1), Income Tax Regs. In order for petitioners to succeed, therefore, they must show, inter alia, that the loss occurred in the taxable year 1963. We are of the opinion that they have failed to carry this burden. Petitioners have urged that the date of loss is the date of the return of Marbury's letter to Berry marked "Moved, Left no address" and dated September 1, 1963. We cannot agree. We can give little, if any, *145 weight to the letter itself other than as proof of the fact that Marbury attempted to contact Berry. We would point out, however, that, in any case, the letter does not support petitioners' contention. The only evidence with regard to the date of the telephone conversation is Berry's testimony. Initially he testified that the conversation took place in 1962. Later, on redirect examination by petitioners' counsel, he admitted that it might have been in 1963. This evidence is, at best, ambiguous and does not satisfy petitioners' burden of showing that the loss occurred in the taxable year 1963. Because the taxable year 1963 is the only year properly before us we cannot speculate as to whether the loss in 1964 of Marbury's money, invested by Berry in a bar operation in Nevada, would be productive of a deductible loss in that year. Because petitioners have failed to carry their burden of proof, we must hold that the loss claimed was not a proper deduction in the taxable year 1963. Decision will be entered under Rule 50. Footnotes
1. Other adjustments in the statutory notice of deficiency have been conceded by respondent. Further, in their opening statement petitioners also stated that the loss was deductible under sec. 166 of the 1954 Code; on brief, however, they have conceded their argument under sec. 166.↩
2. Prior to his testimony at this trial, Berry had informed respondent that he had received no funds whatsoever from Marbury. This statement was affirmed by him as late as the morning of the trial.↩
3. On cross examination by respondent, Berry stated that this conversation took place in 1962. Later on redirect examination by petitioners' counsel, he stated that it might possibly have been in 1963.↩
4. SEC. 165. LOSSES. (c) Limitation on Losses of Individuals. - In the case of an individual, the deduction under subsection (a) shall be limited to - * * *
(2) losses incurred in any transaction entered into for profit, though not connected with a trade or business; and (3) losses of property not connected with a trade or business, if such losses arise * * * from theft. * * *↩